1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  BRUCE R.  LEGASSIE,

11           Petitioner,              No. CIV S-02-2076 LKK KJM P

12      vs.

13  R.L. RUNNELS, et al.,

14           Respondents.          FINDINGS AND RECOMMENDATIONS

15  _____/

16           Petitioner is a state prisoner proceeding pro se with a writ of habeas corpus under

17  28 U.S.C. § 2254.  Respondent has filed an answer, arguing that the state court determination

18  upholding the petitioner's conviction is valid and also that the petition is "mixed" because it

19  contains one unexhausted claim.

20  I.  Factual and Procedural Background

21           Petitioner was convicted of robbery with use of a firearm in Shasta County and

22  sentenced to a total term of twenty-one years.

23           Petitioner appealed his conviction to the Court of Appeal for the Third Appellate

24  District, raising five issues: the trial court erred in refusing to grant a mistrial based on

25  irregularities in the jury selection process; the trial court erred in refusing to grant a mistrial after

26  a witness alluded to petitioner's criminal record; the trial court erred in permitting a police officer

1

1   to give his opinion about a jacket found during the search of petitioner's apartment; the trial court

2   erred in refusing to instruct the jury on conspiracy; and the trial court erred in instructing the jury

3   in the language of CALJIC No. 17.41.1.  Answer, Ex. A (Appellant's Opening Brief) at I, 51.

4           The Court of Appeal affirmed petitioner's conviction in a memorandum filed May

5   11, 2001.  Answer, Ex. B (opinion).

6           Petitioner then filed a Petition for Review in the California Supreme Court,

7   raising the same five issues.  Answer, Ex. C (Petition for Review) at I.  Review was denied on

8   August 22, 2001.  Answer, Ex. D (Supreme Court denial).

9           On October 28, 2002, petitioner filed the instant action, raising the same five

10  grounds raised in his state petitions.

11          Based on its own review of the transcripts, the court adopts the state Court of

12  Appeal's statement of the prosecution's case, which accurately reflects the evidence presented at

13  trial.

14          Eighteen year-old Stephanie Cruz had known defendant for about
            four and one-half years.  Their relationship evolved from one of
15          boyfriend and girlfriend to one characterized by Cruz as brother
            and sister.
16
            During the first week in August 1999, defendant stopped by Cruz's
17          apartment . . . and told her he needed to speak with her.  Ronnie
            Kyles, a recent acquaintance of Cruz, was sitting in her living room
18          when defendant arrived.

19          Defendant and Cruz went into her spare bedroom where defendant
            told her he had a plan to rob a Subway Sandwich Shop (hereafter
20          Subway) in Anderson.  Defendant explained that he wanted to
            commit the crime around closing time. . . so there would be fewer
21          witnesses, and he was going to use a gun for protection.  He also
            indicated that he wanted a driver so he would not have to commit
22          the offense by himself.  Defendant did not ask Cruz to do anything
            to help him and she did not ask to participate. . . .
23
            . . . [T]hey returned to the living room where defendant and Kyles
24          introduced themselves and conversed. . . . [T]he two men discussed
            the possibility of robbing the Subway in Anderson. . . . [and]
25          agreed to commit the robbery.  Cruz was not asked to participate
            and she did not expect to do so.
26

A couple of days later, defendant returned to Cruz's apartment with a gun that he carried in a guitar case.  He showed Cruz the gun and told her he was going to use it in the robbery.  Without asking Cruz's permission, defendant placed the gun under her bed. . . . .

The following day, August 9th, at approximately 8 p.m., defendant again returned to Cruz's residence and told her this was the night they were going to commit the robbery.  About five minutes later, Kyles arrived.  The two men retrieved the gun from beneath Cruz's bed . . . .  Defendant had a ski mask and a green jacket. . . .

At approximately 9:45 p.m., Subway employees, Torrie and Amber McDonald, were preparing to close down the business when a "tall guy came in, completely covered, carrying a shotgun."  He cocked the gun, pointed it at Torrie and told her to get on the floor. . . .The gunman's face was covered with a ski mask, he had a hood on over the mask, and was wearing jeans.  The only part of his face that was visible was the bridge of his nose and his glasses.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

A second unarmed assailant directed both employees to lie on the floor.  This assailant's face was also covered by the hood of his jacket which was pulled tightly around his face, leaving only his eyes visible.  Defendant removed all the money from the registers and placed it in his jacket pocket.

The armed assailant looked around for more money, and when he was unable to find any, ordered Torrie to get up and show him where it was kept. . . . [T]he petty cash . . . in a North Valley Bank bag, was sitting near the main register along with a manila envelope containing $100 and bearing the initials of numerous employees.  The armed assailant took the bank bag, $60 or $80 in rolled quarters, and the manila envelope.  In total, the robbers took approximately $800.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Approximately one hour later, defendant and Kyles returned to Cruz's apartment.  Defendant appeared happy and excited because he had successfully robbed the Subway. . . . [D]efendant, Kyles, and Cruz went into her bedroom where the two men told her what happened.  One of them was carrying a North Valley Bank bag containing a manila envelope and the money they had taken from the Subway.  They divided the money evenly, and then Kyles tossed one remaining roll of quarters to Cruz. . . . [T]he men left the bank bag and manila envelope on the bedroom floor.

On September 1, 1999, Officers Robert Curato and Dale Webb . . . went to Stephanie Cruz's apartment unannounced. . . . [S]he agreed to speak with the officers and gave them permission to search her

apartment.  They found the stolen bank bag in her front room and when they asked her about it, she advised them it was the bag defendant and Kyles had carried into her apartment on the night of the robbery.  The officers also found a manila envelope in a desk drawer in Cruz's bedroom, which was identified . . . as the one taken during the robbery.

The following day . . . Officer Curato executed a search warrant of defendant's house and found a green jacket . . . .

At trial, Torrie described the armed assailant as White, approximately 6'4" to 6'5" in height, and between 180 to 190 pounds in weight and identified defendant as the armed assailant. . . .  She based her in-court identification on the similarity between defendant's height, glasses, nose and those of the armed robber.

Amber described the armed assailant as very tall and slender, around 6'3" or 6'4", wearing glasses.  He was wearing an Army-type jacket and a mask.  At trial, she identified defendant as the armed assailant . . . .  Additionally, Torrie and Amber identified the green Army-type jacket recovered from a closet in defendant's home, as the jacket worn by the armed assailant during the robbery. . . .

Answer, Ex. B at 1-6 (footnotes omitted).

II.  <u>AEDPA Standards</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

/////

1           Although "AEDPA does not require a federal habeas court to adopt any one

2 methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which

3 guide its application.

4           First, the "contrary to" and "unreasonable application" clauses are different.  As

5 the Supreme Court has explained:

6           A federal habeas court may issue the writ under the "contrary to"
          clause if the state court applies a rule different from the governing
7           law set forth in our cases, or if it decides a case differently than we
          have done on a set of materially indistinguishable facts.  The court
8           may grant relief under the "unreasonable application" clause if the
          state court correctly identifies the governing legal principle from
9           our decisions but unreasonably applies it to the facts of the
          particular case.  The focus of the latter inquiry is on whether the
10           state court's application of clearly established federal law is
          objectively unreasonable, and we stressed in Williams [v. Taylor,
11           529 U.S. 362 (2000)] that an unreasonable application is different
          from an incorrect one.

12

13 Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state

14 court's decision was either contrary to or an unreasonable application of federal law.  Woodford

15 v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).  It is appropriate to look to lower court

16 decisions to determine what law has been "clearly established" by the Supreme Court and the

17 reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597,

18 598 (9th Cir. 2000).

19           Second, so long as the state court adjudicated petitioner's claims on the merits, its

20 decision is entitled to deference, no matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt,

21 232 F.3d 1031, 1035 (9th Cir. 2000).  However, when the state court does not issue a "reasoned

22 opinion," this court must undertake an independent review of the claims.  Delgado v. Lewis, 223

23 F.3d 976, 982 (9th Cir. 2002).

24           Third, in determining whether a state court decision is entitled to deference, it is

25 not necessary for the state court to cite or even be aware of the controlling federal authorities "so

26 long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v.

1  <u>Packer</u>, 537 U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

2  statement" of federal law, so long as the fair import of its conclusion is consonant with federal

3  law.  <u>Id</u>.

4  III.  <u>Irregularities In Jury Selection (Ground One)</u>

5              In California, a criminal defendant is entitled to ten peremptory challenges to

6  prospective jurors if he is facing a term of years.  Cal. Code Civ. Proc. § 231(a).  In this case, the

7  court elected to use an "undesignated alternate" system, which

8              would add an additional two peremptory challenges to each side, so
             they would then have 12 peremptory challenges each.
9

10  RT 2.[1]  After several rounds of challenges,  the court explained:

11              [T]here are 12 seated in the soft seats.  And then there are two or
             four seated in the front hard seats.  The 14 – the first 14 will be the
12              jury.

13  RT 116.  When the prosecutor expressed his confusion about his use of peremptories, the court

14  said he could use a challenge against any of the fourteen then in the box.  RT 117.

15              After some initial discussion of hardship and other disqualifying factors, the court

16  had the clerk call eighteen people to the jury box.  RT 50-52.  During the court's questioning,

17  three jurors were excused for cause.  RT 61, 65-66.  From the remaining group of fifteen, the

18  parties exercised two each of their peremptory challenges.  RT 87-88 (Evenson, Steele,

19  McHatton, McPhail).

20              The court then had the clerk call seven names to fill the box with its complement

21  of eighteen prospective jurors.  RT 88.  After these seven were questioned, the parties again

22  exercised peremptory challenges: the prosecutor exercised four challenges and the defense, three.

23  RT 97-98.

24  /////

25  _____

26       [1]  "RT" refers to the reporter's transcript of the Shasta County proceedings, which are
lodged with this court.

                                                    6

1    An additional group of seven prospective jurors was summoned to the box.  RT

2  98-99.  Two of this group were excused for cause,  RT 102-103, before the parties began on their

3  third round of peremptory challenges: the prosecution used an additional two; the defense, an

4  additional three.  RT 105-106.

5    The fourth group of seven was seated and questioned.  RT 106-107.  Prospective

6  juror Wetmore was excused for cause.  RT 109.  In the fourth round of peremptory challenges,

7  the prosecutor exercised an additional three; the defense, one.  RT 115-117.  It was before

8  exercising his last challenge to this group that the prosecutor expressed confusion; the judge

9  responded, "I think you can go ahead, and we can expand it *[sic]* 14. . . ."  RT 117.  Defense

10  counsel then asked the court "to call some more" before he exercised his next challenge, "since

11  we have less than what would actually be stated *[sic]* during the trial."  RT 117.

12    The court called an additional five prospective jurors to the box.  RT 118.  The

13  defense used its tenth challenge, RT 122, and then both sides accepted the jury.  RT 123.  The

14  court sent prospective jurors Stevens, Terrell, and Matthews to the audience and swore the

15  remaining fourteen.  RT 123.

16    Defense counsel objected to the procedure the following morning, arguing that it

17  had been improper to exercise peremptory challenges as to less than fourteen prospective jurors,

18  a full panel under the court's undesignated alternate procedure and California Code of Civil

19  Procedure section 231(d).  The problem, he explained, was "that we did not have the entire panel

20  of 14 at all times.  We did a lot of the time, but we didn't at least two or three times."  RT 144-

21  145.[2]  Counsel argued that while he had not used his last two peremptory challenges, the error

22  had already occurred and he was "stuck in a situation" where his ability to influence the jury by

23

24    [2] Defense counsel exercised his second peremptory challenge with regard to a panel of
   twelve, RT 88, his fifth to a panel of thirteen, RT 98, and his eighth to a panel of twelve.
25  RT 106.  Although the state Court of Appeal calculates the size of these panels slightly
   differently, on the relevant point it also concludes that each of the panels comprised less than
26  fourteen members.  See Answer, Ex. B, n.8.

7

1  his choices had been compromised.  RT 147-148.

2          The court noted the objection for the record, but denied the motion for mistrial.

3  RT 147-148.

4          Petitioner challenged the practice on appeal, arguing again that the procedure

5  violated California Code of Civil Procedure section 231(d) and his right to federal due process.

6  Answer, Ex. A (Appellant's Opening Brief) at 17-30.  The Court of Appeal declined to reach the

7  merits, however, but found the issue waived by counsel's failure to object to the procedure until

8  after the jury was sworn.  Answer, Ex. B at 8-12.

9          Respondent argues the Court of Appeal's ruling acts as a procedural default that

10  bars this court from reaching the merits and, in the alternative, that any irregularities in the

11  procedure do not present a federal question.  Answer at 13-14.

12          A federal court will not review a claim of federal constitutional error raised by a

13  state habeas petitioner if the state court determination of the same issue "rests on a state law

14  ground that is independent of the federal question and adequate to support the judgment."

15  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  This rule also applies when the state court's

16  determination is based on the petitioner's failure to comply with procedural requirements, so

17  long as the procedural rule is an adequate and independent basis for the denial of relief.  Id. at

18  730.  For the bar to be "adequate," it must be "clear, consistently applied, and well-established at

19  the time of the [] purported default."  Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997).  For

20  the bar to be "independent," it must not be "interwoven with the federal law."  Michigan v. Long,

21  463 U.S. 1032, 1040-41 (1983).  If an issue is procedurally defaulted, a federal court may not

22  consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a

23  result of the alleged violation of federal law, or demonstrate that failure to consider the claims

24  will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

25  /////

26  /////

8

1       In Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir.), cert. denied sub nom. Blanks

2    v. Bennett, 540 U.S. 938 (2003), the Ninth Circuit held:

3

4           Once the state has adequately pled the existence of an independent
            and adequate state procedural ground as an affirmative defense, the
            burden to place that defense in issue shifts to the petitioner. The

5           petitioner may satisfy this burden by asserting specific factual
            allegations that demonstrate the inadequacy of the state procedure,

6           including citation to authority demonstrating inconsistent
            application of the rule. Once having done so, however, the ultimate

7           burden is the state's.

8    Although respondent has pled the existence of a procedural bar, petitioner, who has not filed a

9    traverse, has presented nothing suggesting the inadequacy of the procedure nor has the court

10   found such authority.

11       In support of its waiver determination, the Court of Appeal cited three cases.

12   Answer, Ex. B at 11.   In two of those, People v. Cudjo, 6 Cal. 4th 585, 628 (1993) and People v.

13   Ervin, 22 Cal. 4th 48, 73 (2000), the defendants stipulated to jury selection procedures they later

14   challenged on appeal, which limits their application to this case.  In People v. Johnson, 6 Cal. 4th

15   1, 23 (1993), defense counsel objected to a particular juror not when that person was first

16   selected as an alternate, but only when he replaced a juror who had been excused.  The Supreme

17   Court noted the objection came too late, because "[o]bjections to the jury selection process must

18   be made when the selection occurs."  Moreover, in several other cases, the California Supreme

19   Court has found an objection to a jury made after the jury was sworn was too late to preserve the

20   issue for appeal.  People v. Sirhan, 7 Cal.3d 710, 751-52 (1972), overruled on other grounds,

21   Hawkins v. Superior Court, 22 Cal. 3d 584 (1978) (objection to the venire); People v. Olivera,

22   127 Cal. 376, 379-80 (1899) (names of prospective jurors selected from incomplete panel;

23   objection after the jury was sworn was too late).

24       Petitioner has neither challenged the adequate and independent nature of the

25   procedural bar asserted by respondent, nor argued that cause and prejudice exists to permit this

26   court to reach the merits of his claim.  Accordingly, the court cannot reach the substance of

9

petitioner's claim of error  based on the jury selection procedures.

IV.  <u>Mistrial Based On Cruz's Slip-Of-The-Tongue (Ground Two)</u>

    A.  <u>Background</u>

        Stephanie Cruz described how Ronnie Kyles and petitioner met at her apartment, "kind of introduced themselves," and "got into a conversation about how they had been in jail, and the things that they had done, blah, blah, blah.  Well, sorry.  So on, and so on."  RT 255-256. Petitioner personally told the court that some jurors looked at him and shook their heads immediately after this testimony.  RT 257.

        Defense counsel asked to approach the bench and the court excused the jury.  RT 256.  Counsel complained that Cruz had done "just what I feared she might" and moved for a mistrial.  RT 256-257.  The court denied the motion and instructed the jury:

> Ladies and gentlemen, I am admonishing you to disregard the last statement of the witness before we took the break.  You should not consider that testimony, nor allow that testimony to influence your decision in this case.

RT 262.

        The prosecutor then asked Cruz whether, "during the course of the conversation," petitioner had mentioned his plan to rob Subway.  RT 262-263.  Defense counsel again objected, because the question referred the jury's attention back to petitioner's and Kyles' discussion "about how they had been in jail."  RT 319-320.  The court again denied counsel's motion for a mistrial.  RT 320.

        On appeal, petitioner challenged the ruling, arguing that the court's admonition could not cure the harm.  Answer, Ex. A at 34-38.

        The Court of Appeal agreed that Cruz's indiscretion was error, but held the trial court did not abuse its discretion in denying the motion for a mistrial:

> First, Cruz's comment was brief and limited (she did not indicate that defendant was convicted of a felony or on parole), the comment was not repeated, and was not exploited in argument to

1   the jury.  Second, the trial court immediately admonished the jury
    to disregard Cruz's statement and not to let it influence its
2   decision.  Because there is no evidence to indicate the jury failed to
    comply with this admonition, it must be presumed the jury
3   understood and followed it and that any harm was cured.

4   Defendant claims the admonition failed to cure the prejudice from
    Cruz's statement because the prosecutor's next question referred
5   back to the conversation the court had just instructed the jury to
    disregard, implying that the conversation took place and revived
6   Cruz's statement that defendant had been in jail.  We disagree.

7   . . . . Because neither the prosecutor nor Cruz made any further
    reference to defendant's prior record or jail time, there is no reason
8   to believe the jury failed to adhere to the court's admonition.

9   Answer, Ex. B at 16-17 (internal citations omitted).

10       B.  Failure To Exhaust

11       Respondent argues that petitioner is challenging not only the court's refusal to

12   grant his motion for a mistrial but also the prosecutor's failure adequately to admonish Cruz not

13   to mention petitioner's past.  Answer at 17.

14       The United States Supreme Court has held that a federal district court may not

15   entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with

16   respect to each of the claims raised.  Rose v. Lundy, 455 U.S. 509 (1982).  A mixed petition

17   containing both exhausted and unexhausted claims must be dismissed.

18       Petitioner's argument heading refers only to the court's refusing to grant his

19   motion for a mistrial after Cruz's comment.  Pet. (continuation page hand labeled "ground two").

20   In the body of his argument, petitioner alludes to the prosecutor's failure to guard against

21   inadmissible testimony from his witnesses, but this is only part of the broader argument.  The

22   undersigned does not read ground two as an unexhausted claim.

23   /////

24   /////

25   /////

26   /////

1    C.  Inadmissible Evidence And Curative Instructions

2        The Ninth Circuit has held:

3        [T]he admission of evidence in state court is not subject to federal
         habeas review unless the admission of the testimony was arbitrary
4        or fundamentally unfair.

5    Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000) (internal quotation, citation omitted).   The

6    Supreme Court has recognized that

7        Not every admission of inadmissible hearsay or other evidence can
         be considered to be reversible error unavoidable through limiting
8        instructions; instances occur in almost every trial where
         inadmissible evidence creeps in, usually inadvertently. A defendant
9        is entitled to a fair trial but not a perfect one.

10   Bruton v. United States, 391 U.S. 123, 135 (1968) (internal quotation, citation omitted).

11   Moreover, juries are presumed to follow an instruction to disregard inadmissible evidence.  Greer

12   v. Miller, 483 U.S. 756, 767 n.8 (1987).

13       The California Court of Appeal did not apply these principles unreasonably.  It

14   relied on the brief and ambiguous nature of the comment, which was not repeated by counsel,

15   and on the curative instruction given by the court.  This court also cannot find that the

16   prosecutor's later reference to the conversation between Kyles and petitioner somehow overcame

17   the court's prior curative instruction: Cruz did not allude to petitioner's jail time, but only to the

18   discussion of the Subway robbery.  This claim of error does not provide a basis for habeas relief.

19   V.  Curato's Opinion (Ground Three)

20       Officer Curato described finding a green jacket during the search of petitioner's

21   home and explained he seized it because

22       It matched the descriptions given by the two clerks at the Subway
         Sandwich Shop.  And also matched the description that Stephanie
23       Cruz had given us of the jacket that Mr. Legassie had worn at her
         apartment on the night the robbery occurred.  And when I saw that
24       jacket, it was my belief that that was the jacket that was used
         during the robbery.

25

26   RT 406.  Defense counsel objected, but the court permitted the testimony to stand because "it's

12

his opinion."  RT 406.  On appeal petitioner argued the inadmissible opinion testimony was akin

to the officer's opinion that petitioner was guilty.  Answer, Ex. A at 39-41.

> The Court of Appeal rejected petitioner's argument:
>
> We do not interpret Officer Curato's statement to be a conclusion of *fact* that the jacket was the same one worn by the robber but rather a statement of his *belief* that the jacket was the one worn by the robber.  In that context, it was not an inadmissible lay opinion on a crucial fact but rather a description of the officer's state of mind which was necessary to explain why he seized the jacket.
>
> However, even if the jury understood the officer's testimony to be anything other than a simple explanation for why he seized the jacket, the error was harmless.

Answer, Ex. B at 22 (emphasis in original, citations omitted).

Whether the admission of evidence raises a federal question depends on whether

its impact is so prejudicial as to violate a defendant's right to a fundamentally fair trial. Estelle v.

McGuire, 502 U.S. 62, 70  (1991).

In Dubria v. Smith, 224 F.3d 995 (9th Cir.  2000) (en banc), cert. denied, 531 U.S.

1148 (2001), the Ninth Circuit noted that while the testimony of law enforcement officers "often

carries an aura of special reliability and trustworthiness," it would "not assume that opinions of

an investigating officer are presumptively prejudicial."  224 F.3d at 1001 & n.3 (internal

quotations, citations omitted).  To determine whether an officer's testimony had prejudicial

impact, a court must examine it in context.  Id.  If the challenged testimony addresses only

"evidence or theories of the case" presented at trial, there is no error.  Id.

The state Court of Appeal's conclusion was neither an unreasonable determination

of the facts of the case nor an unreasonable application of federal law.  Curato explained that he

seized the jacket because, based on his interviews with the witnesses,  he believed it was the one

worn in the Subway robbery.   Indeed, on cross-examination, he explained "his mindset" when he

/////

/////

1   seized the jacket was based on

2          the description that the two clerks . . . had given, what I hade scene
           [sic] of the jacket on the videotape, the color description, the length
3          of the jacket, on the person I had seen it on.  And just the cut of the
           jacket.  When I looked at the jacket. . . that, in my mind, matched
4          what I had seen on the video.

5   RT 425.   Moreover, the jury saw the videotape of the robbery and could compare the jacket

6   Curato seized and that worn by the robber.  CT 42; RT 408 (videotape admitted); see also RT

7   639 (videotape available to jury during deliberations).  Curato's comment was tied strictly to

8   evidence before the jury and the prosecution's theory of the case.  There was no federal

9   constitutional error.

10  VI.  Co-Conspirator Instructions (Ground Four)

11          During the jury instruction conference, defense counsel asked that the jury be

12  instructed on the concept of an uncharged conspiracy, the notion that the conspiratorial

13  agreement could be proved circumstantially, and the liability of any conspirator for the ultimate

14  crime.  RT 522-523.   Counsel argued that these instructions were necessary background to the

15  jury's consideration whether Cruz was an accomplice whose testimony was insufficient for a

16  conviction unless corroborated.  Cal. Penal Code § 1111; RT 523.  The court refused to so

17  instruct, though it did tell the jury that it

18         cannot find a defendant guilty based upon the testimony of an
           accomplice unless that testimony is corroborated by other evidence
19         which tends to connect that defendant with the commission of the
           offense.  Testimony of an accomplice includes any out–of–court
20         statement purportedly made by an accomplice, received for the
           purpose of proving what the accomplice stated out of court was
21         true.

22  /////

23  /////

24  /////

25  /////

26  /////

                                    14

1
> To corroborate the testimony of an accomplice, there must be
> evidence of some acts or fact related to the crime, which, if
2
> believed, by itself, and without any aid, interpretation, or direction
> from the testimony of the accomplice tends to connect the
3
> defendant with the commission of the crime charged.  However, it
> is not necessary that the evidence of corroboration be sufficient, in
4
> itself, to establish every element of the crime charged, or that it
> corroborate every fact to which the accomplice testifies.

5

6  RT 581-582; CT 93-95.  The court also instructed that the testimony of an accomplice must be

7  viewed with distrust and told the jury it must decide whether Cruz was an accomplice.  RT 582-

8  583; CT 97-98.

9
> The state Court of Appeal rejected the claim on appeal:

10
> [W]e conclude the trial court had no duty to instruct on the law of
> conspiracy because there was no substantial evidence to support a
11
> finding that Cruz was a member of the conspiracy.

12
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

13
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14
> [A]s stated above, conspiracy is a specific intent crime which
> requires proof that the person had the intent to agree or conspire
15
> and the intent to commit the agreed upon target offense.  Here there
> is no evidence to establish that Cruz expressly or tacitly agreed to
16
> commit the robbery, either by her words or by her actions.  To the
> contrary, she was not asked to participate in the robbery, she did
17
> not offer to participate, and she was not involved in the
> commission of the robbery.  Nor did she engage in any acts that
18
> suggested she intended to commit the robbery.  At most, the
> evidence established that she was a passive or silent facilitator of
19
> the crime by virtue of her failure to protest when defendant used
> her apartment to store his gun and to meet Kyles before committing
20
> the robbery.

21
> Nor do we think the fact Kyles tossed Cruz a few dollars in
> quarters indicates that she was a co-conspirator.  To the contrary,
22
> the disparity in the spoils received by Cruz (one roll of quarters)
> and by defendant and Kyles (about $400 each), suggests that she
23
> was not a partner in the scheme to commit the robbery. . . .

24
> Nevertheless, even if the trial court erred by failing to give the
> requested instructions, the failure is harmless. [fn. 19].  The failure
25
> to instruct on accomplice testimony pursuant to section 1111 is
> harmless where there is sufficient corroborating evidence in the
26
> record, evidence that tends to implicate the defendant and relates to

some act or fact which is an element of the crime. . . .

Here there was sufficient corroborating evidence to implicate defendant in the robbery. . . . [B]oth Torrie and Amber identified defendant as the armed assailant on the basis of his height, weight, and glasses, and Torrie also recognized his nose.  They also identified the green jacket that was recovered from defendant's residence and depicted in the videotape as the one worn by the armed assailant.

fn.  19.  Citing *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [65 L.Ed. 2d, 175, 180] and *People v.  Marshall* (1996) 13 Cal. 4th 799, 850-851, defendant claims the error must be tested under the federal constitutional standard enunciated in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] because the instructional error deprived him of findings he was entitled to and thus violated his federal right to due process. Defendant cites no authority to support his claim that failure to give the requested instruction violates a state-created liberty interest, nor do we find one.   Defendant was not charged with conspiracy and there is no statutory requirement that the jury make "findings" regarding accomplices. . . .

Answer, Ex. B at 28-31 (internal citations omitted except as included in text of opinion).

The Supreme Court has held:

The Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice.

Lisenba v.  California, 314 U.S. 219, 227 (1941); see also Harrington v. Nix, 983 F.2d 872, 874

(8th Cir. 1993) ("state laws requiring corroboration do not implicate constitutional concerns that

can be addressed on habeas review"); Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991)

("the prosecution's failure to satisfy the requirements of the accomplice-witness sufficiency rule,

and a state court's failure to enforce that purely state rule, simply would not warrant

constitutional attention").

Petitioner argues, however, California Penal Code section 1111[3] creates a liberty

---

[3]  Section 1111 provides, in pertinent part:

A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to

interest in jury findings on the questions whether a witness is an accomplice and has been

corroborated.  Pet. (continuation page "7" of ground four argument).  In Hicks v. Oklahoma, 447

U.S. 343, 345-46 (1980), the Supreme Court recognized that a state statute may create a liberty

interest in certain procedures being followed in criminal proceedings.   At issue in Hicks was an

Oklahoma statute that gave a convicted defendant the right to have the jury fix punishment; the

Supreme Court found federal constitutional error in a case where the judge, not the jury, imposed

a mandatory prison term.  Id. at 346.  In Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000),

the Ninth Circuit acknowledged that the interaction of section 1111 and Hicks might federalize a

claim that a conviction was based solely on the uncorroborated testimony of an accomplice.

Neither Hicks nor LaBoa support petitioner's argument, however.   Section 1111

says only that uncorroborated accomplice testimony is not sufficient evidentiary support for a

conviction; it says nothing about the sufficiency of the jury instructions on the subject.  Petitioner

has not pointed to any clearly established federal authority suggesting that a state statute that

establishes an evidentiary standard for conviction gives a defendant a liberty interest in any

particular type of jury instruction, nor has he challenged the sufficiency of the evidence in

support of his convictions.  He has not shown he is entitled to federal habeas relief.

VII.  CALJIC No. 17.41.1 (Ground Five)

The court instructed the jury in the language of CALJIC No. 17.41.1, which

informs the jury, in part, that if "any juror refuses to deliberate or expresses an intention to

disregard the law, or to decide this case based upon some improper basis, such as penalty or

punishment, or any other improper basis, it is the obligation of the other jurors to immediately

bring that to my attention. . . ."  RT 570; CT 72.

---

connect the defendant with the commission of the offense; and the
corroboration is not sufficient if it merely shows the commission of
the offense or the circumstances thereof.

1    The Court of Appeal found the issue waived, but, in the alternative, noted :

2    [N]othing in the record indicates defendant was prejudiced by the
     giving of CALJIC No. 17.41.1.  A verdict was reached after
3    deliberations commenced, with no indication of deadlock or
     holdout jurors.  We will not infer that CALJIC No. 17.41.1 had any
4    impact prejudicing defendant.

5    Answer, Ex. B at 32-33.    This court may reach the merits of the claim without first resolving the

6    question of waiver under state law.  Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

7        In Brewer v. Hall, 378 F.3d 952 (9th Cir.), cert. denied, __U.S. __, 125 S. Ct.  814

8    (2004), the Ninth Circuit rejected a challenge to the same instruction:
     It is clear, however, that the California appellate court's holding
9    was not contrary to or an unreasonable application of clearly
     established Supreme Court precedent, because no Supreme Court
10   case establishes that an instruction such as CALJIC 17.41.1
     violates an existing constitutional right.

11

12   378 F.3d at 956.  Petitioner is not entitled to relief on this ground.

13        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

14   writ of habeas corpus be denied.

15        These findings and recommendations are submitted to the United States District

16   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17   days after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1  shall be served and filed within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED:  July 5, 2005.

6  _____
   UNITED STATES MAGISTRATE JUDGE

8  2/lega2076.157